IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KYLA DECK,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:26-CV-2765-L** |
| | § | |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") (Doc. 7), filed by Kyla Deck ("Plaintiff" or "Ms. Deck") on August 21, 2026. The court **denies** Plaintiff's Motion and request for a Temporary Restraining Order ("TRO") to the extent it is based on the National Collegiate Athletic Association's ("NCAA") shortened Transfer Notification Period, and it **declines** to address Plaintiff's Motion and request for TRO with respect to the NCAA's new Five-Year Eligibility Rule or reach the merits of her antitrust claim based on this rule in light of the District of Colorado case referenced in her Motion and pleadings. Plaintiff's Motion with respect to her request for a preliminary injunction is **denied without prejudice**.

## I. Background

On August 18, 2026, Ms. Deck brought this action against Southern Methodist University ("SMU"), the university where she is currently enrolled as a student, and the NCAA. SMU, however, is no longer a party to this action as a result of the Joint Stipulation of Dismissal filed by

Plaintiff on September 3, 2026.[1] Plaintiff's Amended Verified Complaint (Doc. 3) alleges violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff also seeks a declaratory judgment under 28 U.S.C. §§ 2201-2201, as well as injunctive relief in the form of a TRO and preliminary injunction.

Her Motion for injunctive relief targets two new rules recently adopted by the NCAA. The first of these rules reduced the 30-day period to a 15-day period in which athletes are required to notify their current schools that they intend to seek a transfer to another school (the "Transfer Notification Period"). The second new rule concerns eligibility to compete and permits Division I athletes "to compete for five seasons during the five years following the earlier of (i) the first day of enrollment in a collegiate institution, or (ii) the first semester following their nineteenth (19th) birthday (. . . the 'Five[-]Year Eligibility Rule')." Doc. 3 ¶ 25. The Five-Year Eligibility Rule expands the number of seasons that qualifying Division I athletes can now compete.

In support of her Motion, Plaintiff alleges as follows:

> Kyla Deck is a Division I women's basketball player who has done nothing wrong. She started thirteen games for [SMU] last season before suffering an on-court injury in December. [Ms.] Deck and SMU then sought an NCAA waiver to allow her to return to SMU for a fifth season. **Because she intended to remain at SMU, she did not notify SMU that she planned to transfer.**
>
> Two NCAA rule changes, both adopted after [Ms.] Deck's injury, transformed that ordinary decision into a career-ending trap. In January 2026, the NCAA cut the women's basketball transfer-notification window from thirty days to fifteen and moved its trigger later in the calendar. Then, on June 24, 2026—more than two months after the shortened window closed on April 20—the NCAA adopted a rule granting Division I athletes a fifth season of competition while excluding thousands of athletes in [Ms.] Deck's position from its coverage. Coinciding with this rule was an elimination of the process for seeking a waiver of eligibility limitations. [Ms.] Deck could not have anticipated these changes when she chose to pursue a waiver and remain at SMU.

[1] Because Plaintiff filed her Motion before dismissing her claims against SMU, the quoted portions herein of her Motion contain references to "Defendants" when she refers to both SMU and the NCAA collectively.

Dozens of athletes have filed lawsuits challenging the NCAA's rule changes on antitrust and breach of contract grounds. Several courts have already issued a [TRO] granting similar relief to that sought in this case. In one case, a class action, the U.S. District Court for the District of Colorado entered a TRO that, among other things, enjoined the NCAA "from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule . . . or any NCAA Bylaw." Immediately following that decision, which would have reinstated [Ms. Deck's] eligibility to continue her career at SMU, **SMU informed her that she would not be retained for the 2026-2027 season. By that time, the transfer window had already closed.**

In this [M]otion, [Ms.] Deck asks the Court to immediately enjoin the NCAA's unlawful and anticompetitive implementation of (i) the reduced 15-day period in which athletes are required to notify their current schools that they will seek to transfer to another school (the "Transfer Notification Period"), and (ii) the new eligibility rule that permits athletes to compete in athletics for a period of five years (the "Five-Year Eligibility Rule"), but wrongfully excludes thousands of student-athletes—like [Ms.] Deck—from the rule's coverage. [Ms.] Deck also asks the Court to immediately enjoin the NCAA from enforcing a rule that would impose oppressive penalties on schools that recruit [her], should this Court grant the relief she is seeking, but it is later reversed on appeal.

Unless the Court grants [Ms.] Deck the immediate injunctive relief she is seeking, she will suffer immediate and irreparable harm. Specifically, [she] will lose her eligibility to complete her collegiate athletic career under the same rules as her teammates to whom the Transfer Notification Period and the new Five-Year Eligibility Rule applied following the 2025-2026 season. In turn, [she] will lose the scholarship and other opportunities that would have been available to her as she strives to complete her degree. [Ms.] Deck also will lose the significant Name, Image, and Likeness ("NIL") compensation she would receive from playing in the 2026-2027 season.

Multiple Division I programs have expressed an interest in having [Ms.] Deck join their teams for the upcoming season. Yet every such program is bound by an association-wide agreement prohibiting it from signing, assisting, rostering, or competing with her. A violation carries extraordinary penalties: suspension of the head coach for half the season and a fine equal to twenty percent of the program's annual budget. Thus, no Division I program may acquire [Ms.] Deck's athletic services on any terms. That is a horizontal agreement among competing purchasers of labor to refuse to deal, in violation of Section 1 of the Sherman Act.

[Ms.] Deck does not ask the Court to compel SMU to retain, pay, or play her. Nor does she ask the Court to require any other program to sign her. She asks only that the NCAA be enjoined from enforcing the new rules and bylaws to prevent her from competing in the 2026-2027 season. Upon the entry of such injunctive relief, the NCAA's own Bylaw 13.1.1.4.1 supplies the remaining

> procedure: once [she] submits a transfer notification, SMU must enter her information into a national transfer database (the "Transfer Portal") within two business days. The relief [Ms.] Deck seeks is purely prohibitory, imposes no financial burden on Defendants, and restores the position [she] occupied before the NCAA changed the rules beneath her.
>
> The 2026-2027 season is imminent. Programs are finalizing practices, enrollment, rosters, and NIL arrangements. Each day [Ms.] Deck remains unable to join a program[] another viable opportunity disappears. Damages awarded in 2028 cannot restore the only 2026-2027 season she will ever have. An *ex parte* fourteen-day TRO is appropriate because both Defendants have been personally served with summonses and the Verified Complaint and will be personally served with this motion; because the NCAA has already demonstrated awareness of this case by filing a Notice of Additional Related Actions seeking to add it to *In re College Athlete Eligibility Rules Antitrust Litigation*, MDL No. 3198 (JPML Aug. 20, 2026), Dkt. 18 [APP. 101]; and because [Ms.] Deck is serving by email three attorneys who recently represented the NCAA in another eligibility case before this Court. *See* Menditto Atty. Cert. [APP. 347].

Doc. 7-1 at 1-3 (emphasis added). Plaintiff acknowledges in a footnote that "[t]he NCAA has appealed the Colorado decision to the Tenth Circuit, which in a 2-1 ruling has temporarily stayed enforcement of the TRO."[2] Doc. 7-1 at 2 n.1.

With respect to the NCAA's new reduced Transfer Notification Period, Plaintiff's Amended Verified Complaint contains similar allegations as those emphasized above by the court. For example, Ms. Deck alleges in her Amended Verified Complaint that: (1) "because [she] wanted to return to SMU, she did not notify the school that she wanted to transfer to another school during the Transfer Notification Period"; (2) "On August 3, 2026, SMU notified [her] that it would not retain her on the team's roster for the upcoming 2026-2027 season"; and (3) "As a result of SMU's decision, [she] was left without a team on which to play for the upcoming season because

[2] The court notes that the July 31, 2026 order entered by the district court in *Wisne* granted a preliminary injunction rather than a TRO. In this regard, the *Wisne* court noted that, while Plaintiffs styled their motion as one seeking a TRO, they sought a preliminary injunction in the alternative, and the court "ultimately issues a preliminary injunction rather than a temporary restraining order." *See Wisne*, 2026 WL 2214234, at *1 & n.1.

she had not notified SMU of an intent to transfer schools during the Transfer Notification Period, which had closed on April 20, 2026." Doc. 3 ¶¶ 24, 34, 35.

With respect to the NCAA's adoption of the new Five-Year Eligibility Rule and how it pertains to her situation, Ms. Deck alleges in her Amended Verified Complaint:

> 25. On June 24, 2026—over two months after the Transfer Notification Period had closed—the NCAA adopted a new rule, effective August 1, 2026, which allows Division I athletes to compete for five seasons during the five years following the earlier of (i) the first day of enrollment in a collegiate institution, or (ii) the first semester following their nineteenth (19th) birthday (previously defined as the "<u>Five Year Eligibility Rule</u>"). This is now the standard rule of eligibility for the majority of student-athletes who competed in the 2025-2026 season and all athletes commencing their college careers after August 1, 2026.
>
> 26. The Five-Year Eligibility Rule was immediately challenged throughout the nation by athletes whose eligibility had expired under the Four-in-Five Eligibility Rules, but who would be eligible to compete for a fifth year in the upcoming 2026-2027 season.
>
> 27. One of the cases in which the Five-Year Eligibility Rule has been challenged is a class action styled *Wisne v. NCAA*, No. 26-cv-03063 (D. Colo.) (filed July 8, 2026).
>
> 28. On July 31, 2026, the *Wisne* court certified a nationwide class of athletes—**of which [Ms.] Deck is a member**—and imposed a preliminary injunction that bars the NCAA from applying the Five-Year Eligibility Rule to deny those athletes a fifth year of eligibility. *See Wisne*, No. 26-cv-03063, 2026 WL 2214234, at *22 (D. Colo. July 31, 2026), *opinion clarified*, No. 26-cv-03063, 2026 WL 2214320, at *2 (D. Colo. Aug. 2, 2026) ("[L]est the result of the order be misconstrued, the Court reiterates that the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule … or any NCAA Bylaw"). The NCAA immediately filed a notice of appeal, *see Wisne v. NCAA*, No. 26-1309 (10th Cir. Aug. 3, 2026) and a motion to stay enforcement of the injunction order, which the district court promptly denied, *see Wisne*, 26-cv-03063, Dkt. 56 (Aug. 10, 2026).
>
> 29. [Ms.] Deck satisfies each element of the *Wisne* class definition. [Ms.] Deck is a member of the high school class of 2022. She first enrolled in a collegiate institution in the fall of 2022 and first competed in NCAA Division I athletics during the 2022-2023 season. She was not more than twenty years old at the time of that enrollment. She has never entered a professional draft, has never signed a professional contract in basketball, and has never been compensated to play

professionally. The 2026-2027 academic year falls within five years of both her first collegiate enrollment and the first semester following her nineteenth birthday.

30. The NCAA's transition rule provides that student-athletes who used their final season of competition under the Four-in-Five Eligibility Rule during 2025-2026 receive no additional eligibility, while athletes with eligibility remaining after 2025-2026 receive the more favorable result under either the prior rule or the new five-year framework (the "transition rule"). The NCAA also set July 31, 2026 as the deadline for schools to submit remaining waiver requests under the former system based on circumstances occurring during or before 2025-2026, after which those waiver avenues cease to exist. As applied to an athlete who exhausted four counted seasons by spring 2026, the transition rule denies [Ms.] Deck the benefit of the new framework solely because of the timing of her exhaustion of eligibility.

31. The NCAA has appealed the *Wisne* injunction and has moved the Tenth Circuit for a stay pending appeal. [Ms.] Deck therefore pleads her challenge to the transition rule in the alternative and as protective relief. If the *Wisne* injunction is stayed or reversed, the transition rule will again operate to bar [Ms.] Deck from competing in 2026-2027, and she will require independent relief from this Court on the eve of the season.

32. **The *Wisne* court expressly clarified that its "order does not enjoin the operation of transfer rules," meaning an athlete's access to the Transfer Portal required them to have provided a transfer notification to their schools within the Transfer Notification Period.** *See Wisne*, 2026 WL 2214320, at *3.

33. **Class members [like Ms. Deck] who did not provide a transfer notification during their sport's Transfer Notification Period therefore remain unable to transfer** under the NCAA's position, and may at most return to their prior institution. [Ms.] Deck cannot return to SMU. The relief entered in *Wisne* accordingly does not and cannot remedy her exclusion from the Division I transfer market.

Doc. 3 ¶¶ 25-33 (emphasis added).

Plaintiff seeks a TRO against "Defendants" and she requests the court to:

1. Enter a Temporary Restraining Order, without notice and without security, effective for fourteen days unless extended, enjoining and restraining the NCAA from:

a. enforcing the period in which athletes are required to notify their current schools that they will seek to transfer to another school (the "Transfer Notification Period"), as codified in the NCAA Division I 2026-27 Manual (the "2026 Manual"), Bylaw 13.1.1.4.1(d), against [Ms.] Deck, including from treating a notification of transfer submitted by her as untimely;

b. enforcing the new eligibility rule that permits athletes to compete in athletics for a period of five years (the "Five-Year Eligibility Rule"), as codified in the 2026 Manual, Bylaw 12.6, to the extent it excludes [Ms.] Deck from competing in the 2026-2027 Division I women's basketball season;

c. imposing or threatening fines, suspensions, or other punishment upon SMU or any Division I institution by reason of the entry of [Ms.] Deck's information into the national transfer database (the "Transfer Portal"), as codified in the 2026 Manual, Bylaw 13.1.1.4.9, outside the Transfer Notification Period;

d. invoking or enforcing the Rule of Restitution, as codified in the 2026 Manual, Bylaw 12.9.4.2, to impose or threaten fines, suspensions or other punishments against [Ms.] Deck, SMU, or any institution on account of actions taken by [Ms.] [Ms.] Deck, SMU or any institution in reliance on injunctive relief imposed by this Court, in the event such injunctive relief is—in whole or in part—voluntarily vacated, stayed, or reversed or it is finally determined by the courts that injunctive relief is not or was not justified;

e. applying any rule or bylaw, interpretation, waiver standard, or policy so as to withhold from [Ms.] Deck a season of intercollegiate competition during the 2026-2027 season on account of conduct undertaken in reliance upon an order of this Court.

Doc. 7 at 1-2; and:

2. In the alternative, and only to the extent the Court concludes that the relief sought in Paragraph 1 is insufficient to permit [Ms.] Deck's entry into the Transfer Portal, enter a [TRO], without notice and without security, effective for fourteen days unless extended, enjoining and restraining SMU from:

a. refusing, upon receipt of a written notification of transfer from [Ms.] Deck, to enter her information into the Transfer Portal within two business days as required by 2026 Manual, Bylaw 13.1.1.4.1; and

b. refusing to certify, report, or otherwise transmit to the NCAA any information regarding [Ms.] Deck that the 2026 Manual requires SMU to submit in connection with her entry into the Transfer Portal.

*Id.* at 2-3.

The court denied Plaintiff's request for *ex parte* relief for the reasons explained in a prior order (Doc. 15) and indicated that it would rule on Plaintiff's Motion after briefing on it was complete. As noted, SMU is no longer a party to this action, so the court decides only whether

Plaintiff is entitled to a TRO or preliminary injunction against the NCAA. *See* Docs. 24, 25. For the reasons that follow, the court determines that Plaintiff is not entitled to a TRO with respect to the NCAA's new reduced Transfer Notification Period. Further, because Plaintiff alleges that she is a member of a class action that was filed in federal court in Colorado before this case was filed by her in this district, and both cases seek to enjoin enforcement of the NCAA's new Five-Year Eligibility Rule based on the assertion of substantially similar antitrust and declaratory judgment claims, the court declines to weigh in on the issue of whether Plaintiff is entitled to similar injunctive relief in this case in the form of a TRO or preliminary injunction, or has a valid antitrust claim with respect to the NCAA's new Five-Year Eligibility Rule.

## II. Legal Standard for Injunctive Relief

There are four prerequisites for the extraordinary relief of a TRO or preliminary injunction. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the [TRO or preliminary] injunction [are] not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction [or TRO] will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a TRO or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant a TRO or preliminary injunction.

## III. Discussion

### A. NCAA Transfer Notification Period

Regarding Plaintiff's request for a TRO to enjoin the NCAA's enforcement of the new 15-day Transfer Notification Rule and period with respect to her, the NCAA contends:

> Plaintiff filed this lawsuit after SMU elected not to retain her on its roster for the 2026-27 season. Compl. ¶ 34. As a result, even if Plaintiff were somehow able to establish eligibility, she would still need to enter the transfer portal and secure an opportunity with another institution. *Id.* ¶¶ 32-34. Simply, Plaintiff does not seek to preserve an existing privilege. She asks this Court to create one: an order requiring the NCAA to allow an ineligible student-athlete to enter the transfer portal after the applicable deadline has expired. The Court should decline that invitation and deny her request.

Doc. 28 at 5. Defendant further contends that Plaintiff has not suffered any "actual injury" because her "alleged injury is not the product of any recent change to the NCAA's rules." *Id.* at 14-15.

The court agrees with the NCAA to the extent that it determines that the factual allegations in Plaintiff's Motion and verified pleadings do not support her contention that her alleged injury is attributable to the NCAA's adoption and implementation of the new 15-day Transfer Notification Rule. Accordingly, while the parties' briefing is devoted in large part to the allegedly anticompetitive effect of the new 15-day Transfer Notification Rule, the court's analysis focuses on whether Plaintiff's injury is attributable to the NCAA's allegedly anticompetitive conduct insofar as it concerns the new 15-day Transfer Notification Rule.

"Antitrust law has its own threshold for standing." *Tesla, Inc. v. Louisiana Auto. Dealers Assoc.*, 113 F.4th 511, 528 (5th Cir. 2024). While antitrust standing does not implicate the court's subject matter jurisdiction, a plaintiff asserting a violation of antitrust law must establish antitrust standing. *See Rx Solutions, Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 443-45 (5th Cir. 2026). Consequently, "an antitrust plaintiff must do more than meet the requirements of Article III to establish its standing to bring suit." *Id.* (citation omitted). An antitrust plaintiff must establish: "1)

injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Tesla, Inc.*, 113 F.4th at 528 (citation omitted).

Antitrust injury concerns "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022). Accordingly, "[t]he injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations . . . would be likely to cause.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)) (other citation omitted). "Even if a defendant's conduct violates the antitrust laws—and hence carries certain anticompetitive effects—a given plaintiff lacks antitrust standing unless [the] asserted injury reflects 'an anticompetitive aspect of the defendant's conduct.'" *Pulse Network, L.L.C.*, 30 F.4th at 488 (quoting *Atlantic Richfield Co. v. USA Petroleum Co. (ARCO)*, 495 U.S. 328, 339 (1990)).

Plaintiff describes her alleged injury as "exclusion from a specific season of Division I competition and the associated time-sensitive athletic, educational, and professional opportunities." Doc. 3 ¶ 67. In addition, she alleges that she sustained an "antitrust injury" that "flows directly from the anticompetitive aspect of the restraints" imposed by the shortened Transfer Notification Period. Doc. 3 ¶ 78. While verified, these allegations are conclusory. The factual allegations in her Motion and verified pleadings also undermine her contention that the NCAA's decision in January 2026 to shorten the Transfer Notification Period from 30 to 15 days qualifies as an antitrust injury.

For example, Plaintiff concedes that she made the decision not to notify SMU during the Transfer Notification Period that she wanted to transfer to another school because she had decided

that she wanted to remain at SMU. Doc. 3 ¶ 24. In addition, Plaintiff acknowledges that SMU notified her on August 3, 2026, that it did not intend to retain her on the team's roster for the upcoming 2026-2027 season; however, by this time, the Transfer Notification Period had long since closed on April 20, 2026. *Id.* ¶¶ 34-35. Plaintiff also acknowledges that her predicament is attributable to the decisions made by her and SMU: "***As a result of SMU's decision***, [she] was left without a team on which to play for the upcoming season ***because she had not notified SMU of an intent to transfer schools during the Transfer Notification Period***, which had closed on April 20, 2026." *Id.* ¶ 35. The court, therefore, disagrees that the NCAA's actions—in adopting a shortened Transfer Notification Period, as opposed to Plaintiff's and SMU's decision making and the timing of those decisions—caused Plaintiff's alleged injury.

Moreover, the result would have been the same under the prior 30-day Transfer Notification Period because SMU's August 3, 2026 notification came more than three months after the Transfer Notification Period on April 20, 2026, and Ms. Deck does not contend that the NCAA's prior 30-day transfer rule violates antitrust laws. Instead, her antitrust claim with respect to the transfer period is limited to damages or injuries "resulting from the NCAA's [allegedly] unlawful implementation of . . . the reduced 15-day period in which athletes are required to notify their current schools that they will seek to transfer to another school." Doc. 3 ¶ 1.

Plaintiff's assertion that she could not have anticipated the NCAA's rule changes when she chose to remain at SMU and pursue a waiver is of no moment. Doc. 7-1 at 1. Plaintiff does not allege that her decision to remain with SMU turned on a promise by SMU to include her on the team's roster for the upcoming 2026-2027 season; nor does she contend that SMU should be required to "retain, pay, or play her." Doc. 7-1 at 3. Thus, in deciding to remain with SMU and to forego a transfer until after the Transfer Notification Period closed, Plaintiff accepted the risk that

SMU might not include her on the team's roster for the upcoming 2026-2027 season. Accordingly, any alleged harm resulting from her decision to forego a transfer cannot be said to be related in any way to the shortening of the Transfer Notification Period from 30 to 15 days.

Even assuming that the shortened Transfer Notification Period has the anticompetitive effects urged by Plaintiff, the court determines that she lacks "proper plaintiff status" or antitrust standing to bring suit because her verified allegations do not support a finding that the NCAA's allegedly anticompetitive conduct in connection with the shortened Transfer Notification Period proximately caused her alleged injury. *Pulse Network, L.L.C.*, 30 F.4th at 491 (quoting *ARCO*, 495 U.S. at 345-46). The court, therefore, **denies** Plaintiff's request for a TRO with respect to the NCAA's new Transfer Notification Period.

**B. NCAA Five-Year Eligibility Rule**

The *Wisne* class action referenced in Plaintiff's Motion and pleadings was filed in federal court in the District of Colorado on July 8, 2026, before Ms. Deck filed this action in the Northern District of Texas on August 18, 2026. Doc. 3 ¶ 27; *see also Wisne*, 2026 WL 2214234, at *3. As indicated, Ms. Deck alleges that she is a member of the class certified by the *Wisne* court, which granted the plaintiffs' motion for a preliminary injunction on July 31, 2026, and enjoined the NCAA from applying the Five-Year Eligibility Rule to deny athletes like her a fifth year of eligibility to compete. Enforcement of the preliminary injunction was then stayed on August 21, 2026, by the Tenth Circuit pending resolution of the NCAA's appeal.

For the reasons that follow, the court determines that the "first to file" rule, which is "grounded in principles of comity and sound judicial administration," applies here. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). As explained by the Fifth Circuit in *Save Power*, federal courts have long "recognized that the principle of comity requires federal

district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Id.* (citation omitted). The rule's purpose is to avoid wasteful duplication, rulings that "may trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result." *Id.* (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-20 (1976)) (other citation omitted). The rule applies equally to related cases pending in the same district before different judges and related cases filed in different districts. *Id.* (footnote omitted). For the rule to apply, the issues and parties in the cases need not be identical; all that is required is the likelihood of "substantial overlap" of the "substantive issues." *Id.* & n.4 (citations omitted).

Although Plaintiff alleges, and the court's review of the Complaint in the *Wisne* case confirms, that the plaintiffs' antitrust claim and request for declaratory judgment in that case concern the Five-Year Eligibility Rule, not the Transfer Notification Period rule, the Sherman Act claims and requests for declaratory and injunctive relief in both cases involve the same issues and requests for relief. While Ms. Deck is not a named party or party representative in the *Wisne* case, she alleges that she is a member of the *Wisne* class, and she seeks the substantially same relief in this case as that sought by the named plaintiffs in *Wisne*.

The "first to file" rule, therefore, applies here such that the *Wisne* court, as the court that first acquired jurisdiction over the antitrust controversy involving the NCAA's new Five-Year Eligibility Rule, has priority. *See id.* at 950 (citations omitted). To avoid likely duplication and potential inconsistency in rulings, the court **declines** to address Plaintiff's Motion with respect to the NCAA's new Five-Year Eligibility Rule or reach the merits of her antitrust claim based on this rule. *See id.*; *see also International Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011) ("Under the first-to-file rule, when related cases are pending before two

federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.") (footnote and citation omitted).

Additionally, as Plaintiff is a class member in the *Wisne* case, the court sees no economy or utility in severing and transferring her antitrust claim concerning the Five-Year Eligibility Rule to the District of Colorado, and Plaintiff has not requested such relief in the alternative. It also appears from Plaintiff's pleadings and briefing that the court's denial of Plaintiff's request for a TRO with respect to the Transfer Notification Period may have mooted her request for injunctive relief based on the Five-Year Eligibility Rule because, to be meaningful, relief regarding the Five-Year Eligibility Rule seems to depend on Plaintiff also being relieved from any limitation on her ability to transfer to another school.

**IV. Notice of Withdrawal**

On November 12, 2026, after the court had already finished drafting this memorandum opinion and order, Plaintiff's counsel left a voice message on the undersigned's judicial assistant's telephone, and advised her that Ms. Deck intended to withdraw her Motion and request for injunctive relief. On November 13, 2026, Plaintiff filed her "Notice of Withdrawal, Without Prejudice, of Her Motion for Temporary Restraining order and Preliminary Injunction" ("Notice of Withdrawal") (Doc. 34). In the Notice of Withdrawal, Plaintiff explains that she is withdrawing her Motion for two reasons: (1) because on November 6, 2026, the Tenth Circuit reversed and vacated the class-wide preliminary injunction in *Wisne*; and (2) even if she were to prevail on her Motion, she would not be able to apply and "get admitted to another school and be in sufficient athletic condition for Spring given the lapse in training due to the NCAA's wrongful exclusion of her from the portal and improper abandonment of her injury waiver." Doc. 34 at 1-2. Plaintiff explains that she has decided to "seek relief relative to entry into the portal in April 2027, which

need not be decided on an 'emergency' basis." *Id.* at 2. Instead, Plaintiff intends to request "expedited discovery and a merits hearing on [a] permanent injunction prior to April 2027." *Id.*

In addition, Plaintiff notes that she "does not concede any argument raised in [the NCAA's] opposition [to her Motion] [ECF 28], and this withdrawal is not an abandonment of any claim pleaded in [her Amended] Verified Complaint." *Id.* Finally, Plaintiff asserts that she:

> reserves the right to seek interim relief on a developed record should circumstances warrant, and she intends to prosecute her claims, including her claim for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, on the merits. Plaintiff will confer promptly with counsel for Defendant regarding a proposed schedule for the remainder of the case.

*Id.*

It is because of this reservation of rights and Plaintiff's notice that she is withdrawing her Motion without prejudice, that the court views this as a live issue and decided to enter this memorandum opinion and order on the Motion notwithstanding Plaintiff's Notice of Withdrawal. Additionally, the court believes that the explanation for its rulings should facilitate the expeditious resolution of Plaintiff's claims and this case moving forward, particularly in light of the court's decision to decline to address Plaintiff's antitrust claim concerning the Five-Year Eligibility Rule.

## V. Conclusion

For the reasons explained, the court **denies** Plaintiff's Motion to the extent she seeks a TRO with respect to the NCAA's shortened Transfer Notification Period. The court **denies without prejudice** Plaintiff's Motion to the extent she seeks a preliminary injunction with respect to the NCAA's shortened Transfer Notification Period. Further, the court **declines** to address Plaintiff's Motion with respect to the NCAA's new Five-Year Eligibility Rule or reach the merits of her antitrust claim based on this rule given its determination that the "first to file" rule applies in this case.

**It is so ordered** this 13th day of November, 2026.

Sam A. Lindsay
United States District Judge